UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JOSELIN M. KVETKOSKY, AS PERSONAL
REPRESENTATIVE OF THE ESTATE OF
JEFFREY C. VANCE,
    Plaintiff,

v.                                                                         CIVIL ACTION NO. 18-10607-GAO

BOYSTUN EQUIPMENT MANUFACTURING,
LLC; BOYDSTUN METAL WORKS, INC.;
UNKNOWN SUPPLIER AND DISTRIBUTORS
OF BOYDSTUN TRAILER IN JACK COOPER
TRANSPORT COMPANY FLEET NUMBER
2733-2744; UNKNOWN SUPPLIERS,
DISTRIBUTORS AND MANUFACTURERS
OF ACTUATORS ON BOYDSTUN TRAILER
IN JACK COOPER TRANSPORT COMPANY
FLEET NUMBER 2733-2744; UNKNOWN
MAINTENANCE COMPANIES AND
PERSONS THAT PROVIDED INSPECTION,
REPAIR, REFURBISHMENT AND/OR
MAINTENANCE TO BOYDSTUN TRAILER
IN JACK COOPER TRANSPRORT COMPANY
FLEET NUMBER 2733-2744,
    Defendants.

REPORT AND RECOMMENDATION ON DEFENDANT, BOYDSTUN EQUIPMENT
MANUFACTURING, LLC'S MOTION FOR SUMMARY JUDGMENT (#62).

KELLEY, U.S.M.J.

I. Introduction.

This is a successor liability case. Decedent, Jeffrey C. Vance, died as a result of injuries he sustained after he fell from a car-hauling trailer in Spencer, Massachusetts. (#1-1 at 8 ¶ 9; 9 ¶ 15.) On December 8, 2017, plaintiff, Joselin M. Kvetkosky, individually and as personal representative

1

of Vance's estate, brought negligence and products liability claims against defendant, Boydstun Equipment Manufacturing, LLC (BEM), along with multiple, other corporate and individual defendants, in Massachusetts state court. *Id.* at 6–16. The matter was removed to this court on March 29, 2018, pursuant to 28 U.S.C. §§ 1332, 1441, 1446. (#1 at 1.)

Plaintiff alleges that BEM should be liable as a successor entity to defendant, Boydstun Metal Works, Inc. (BMW), the now-dissolved corporation that manufactured the trailer from which Vance allegedly fell. (#1-1 at 7 ¶¶ 3–4; 8 ¶¶ 10–11; 9 ¶ 15.)[1]

On August 15, 2019, BEM filed a motion for summary judgment, arguing that it cannot be liable as a successor entity to BMW. (#62.) BEM's motion is now poised for disposition.

## II. The Facts.

The following facts are undisputed unless indicated. According to plaintiff's complaint, BEM is a limited liability company with a principal place of business in Oregon, and BMW is an inactive corporation, whose most recent principal place of business was also located in Oregon. (#1-1 at 7 ¶¶ 2–3; #66-1 at 1–4; #66-2 at 1–3.) Prior to dissolving, BMW had manufactured, distributed, and serviced commercial tractor trailers for use in the inter-state transport of automobiles. (#1-1 at 8 ¶ 10.) Vance was employed by Jack Cooper Transportation Company (Jack Cooper) as a "car hauler, tractor truck driver." *Id.* at 9 ¶ 14.[2] Jack Cooper purchased BMW trailers for use in its business hauling automobiles cross-country. *Id.* at 13 ¶ 39. As part of its business, Jack Cooper "routinely performed maintenance, repair, inspection[,] and refurbishing services on [BMW] trailers" passing through Massachusetts. *Id.* at 8–9 ¶¶ 12–13.

---

[1] On February 5, 2019, the district court granted plaintiff's motion for an entry of default against BMW. (#36.)

[2] Jack Cooper, a former defendant, was dismissed from the case, with prejudice, on May 7, 2018. (#20.)

Vance died on December 11, 2014, as a result of employment-related injuries he sustained after he fell from the deck of a trailer, manufactured by BMW in 2006, "while attempting [to] free a stuck/frozen hydraulic actuator." *Id.* at 9 ¶¶ 15–16; *see* #63-1 at 15 ¶ 4. Plaintiff alleges that Vance's fall resulted from "inadequate footing, inadequate or non-existent handholds or other safety measures, and/or inadequate or defective hydraulic actuators" on the BMW trailer. (#1-1 at 9 ¶ 19.) Plaintiff maintains "[t]he trailer was in substantially the same condition" on the date of Vance's death as it was when it left BMW's control. *Id.* at 9 ¶ 20.

Over five years before Vance's accident, on April 6, 2009, BMW filed for Chapter 7 bankruptcy in the District of Oregon. (#63-1 at 36.) BMW's eligible assets, estimated by the bankruptcy trustee to have a net value of $15,986,639.47, were liquidated, yielding $2,636,488.51 in gross receipts, all of which was either distributed to BMW's bankruptcy creditors or used to cover the cost of administering the estate. (#66-3 at 1, 15–16.)[3] While few, if any, of the assets were distributed to Robert D. Boydstun IV (Boydstun), BMW's former president and majority shareholder, and an unsecured creditor, Boydstun did purchase "equipment per notice[,]" valued at approximately $22,000, for $7,000 as part of the liquidation process. *Id.* at 1–15.[4] Boydstun later testified at his July 19, 2019 deposition that he did not acquire any other property from the bankruptcy trustee that was previously held by BMW. (#66-4 at 24–25.)

BMW was administratively dissolved in April 2010, after it allowed its standing with the Oregon Secretary of State to lapse. (#66-1 at 2.) The trustee in the bankruptcy case was dismissed

---

[3] Assets in the amount of $26,225.00 were abandoned, without deducting any secured claims. (#66-3 at 1.)

[4] According to BEM's responses to plaintiff's supplemental request for production of documents, the $22,000 worth of equipment purchased by Boydstun appears to be referring to two rolling machines "acquired by [Boydstun] from the bankruptcy trustee." (#66-9 at 2–3.) BEM maintains that it did not use the rolling machines in its new business. *Id.* at 3.

3

on March 12, 2012, and the case was closed. (#63-1 at 34.) According to an affidavit filed by Boydstun on August 15, 2019, several years after BMW's dissolution, some of BMW's former customers began to reach out and inquire whether Boydstun "could start a new company and get back into the car hauling business." (#63-1 at 23 ¶ 13.) After considering various market factors, Boydstun formed BEM, incorporating the company on April 28, 2014. *Id*. at 23 ¶ 3. Boydstun currently occupies the same roles as president and majority shareholder at BEM that he did at BMW. *Id.* at 22 ¶ 1; #66-4 at 31.

Because it is undisputed that BMW, and not BEM, manufactured the trailer at issue—and the record does not indicate that BEM was otherwise associated with the subject trailer—BEM's liability hinges on whether it can be considered a successor to BMW. In support of BEM's argument that it cannot, Boydstun maintained in his affidavit that (as evidenced by the bankruptcy proceedings) BEM did not purchase any assets of BMW or use any tools, equipment, or machine works previously owned by BMW to manufacture its products. (#63-1 at 23 ¶¶ 15–16.) He also asserted that BEM never occupied the real estate, location, or plant where BMW previously operated its business. *Id.* at 24 ¶ 22.[5]

However, in addition to having the same president and majority shareholder (Boydstun) and some of the same employees, it is undisputed that BMW and BEM have the same URL, Boydstun.com. (#66-4 at 32.) Boytstun testified at his deposition that, until recently, Boydstun.com indicated that BEM had been in the commercial car industry since 1989, the year

---

[5] In a further effort to distinguish BEM from BMW, Boydstun maintained in his affidavit that only eleven of BEM's forty current employees were previously employed at BMW, that the product lines at BEM are different from those at BMW, and that BEM's products are manufactured using different processes than BMW's products were. (#63-1 24 ¶¶ 17–19.) Moreover, BEM did not conduct any business before April 2014, and Boydstun himself "did not do any business in the entire [a]utomotive industry from mid-2009 through April 2014." *Id*. at 22 ¶ 14. For the reasons discussed *infra*, these additional distinctions do not impact the court's decision.

4

BMW formed, although BEM itself was not formed until 2014. *Id.* at 39–41; *see also* #66-5 at 1. Boydstun also testified that BEM has sold parts for BMW trailers and that BEM had some of the same customers that BMW once had. (#66-4 at 11, 25.)[6] Furthermore, BEM had acquired patents that were, at one point, the property of BMW. *Id.* at 20. An article from July 2014, published in the trade magazine, *Automotive Logistics*, indicated BEM had been "formerly known as" BMW and was scheduled to "return to the manufacturing of commercial auto transport equipment" later that year. (#66-11 at 1.)

Despite the obvious similarities between BEM and BMW, it is recommended that BEM's motion for summary judgment be granted for the following reasons.

### III.  Standard of Review.

Summary judgment will be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To prevail on a motion for summary judgment, the moving party bears the initial burden of averring the absence of a genuine issue of material fact and "support[ing] that assertion by affidavits, admissions, or other materials of evidentiary quality." *Mulvihill v. Top-Flite Golf Co.*, 335 F.3d 15, 19 (1st Cir. 2003) (citations omitted). Once the moving party asserts the absence of a genuine issue of material fact, the non-movant must demonstrate the existence of a factual dispute with requisite sufficiency to proceed to trial. *Fontánez-Núñez v. Janssen Ortho LLC*, 447 F.3d 50, 54–55 (1st Cir. 2006). "[C]onclusory allegations, improbable inferences, . . . or rank speculation" cannot alone defeat summary judgment. *Miceli v. JetBlue Airways Corp.*, 914 F.3d 73, 81 (1st Cir. 2019) (quoting *Ahern v. Shinseki*, 629 F.3d 49, 54 (1st Cir. 2010)).

---

[6] Boydstun also testified at his deposition that BEM allows independent customers to advertise used equipment for sale, including BMW trailers, on its webpage. (#66-4 at 9.) However, it has no control over the trailers and does not receive a commission or profit on the sales. *Id.*

5

In determining whether summary judgment is proper, courts view the record in the light most favorable to the nonmoving party, and all reasonable inferences must be drawn in the non-movant's favor. *Caraballo-Caraballo v. Corr. Admin.*, 892 F.3d 53, 56 (1st Cir. 2018) (citations omitted). Upon a party's motion, Rule 56 requires the entry of summary judgment when the nonmoving party fails to establish the existence of any one essential element on which he will bear the final burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (internal citations and quotation marks omitted).

## IV. Discussion.

Courts interpreting both Massachusetts and Oregon law[7] have held that "[c]orporations are distinct and separate entities, with distinct and separate assets and liabilities." *Fashionhaus v. T & C Main St., Inc.*, No. 17-P-1336, 2018 WL 3965905, at *2 (Mass. App. Ct. Aug. 20, 2018) (citing *Gordon Chem. Co. v. Aetna Cas. & Sur. Co.*, 266 N.E.2d 653, 657 (Mass. 2008), and *Scott v. NG U.S. 1, Inc.*, 881 N.E.2d 1125, 1131 (Mass. 2008)); *see Dahlke v. Cascade Acoustics, Inc.*, 171 P.3d 992, 997 (Or. Ct. App. 2007). Therefore, a corporation is generally "not responsible for the debts of another corporation" who transfers its assets. *Fashionhaus*, 2018 WL 3965905, at *2 (citing *Scott*, 881 N.E.2d at 1131–32); *see Gonzalez v. Standard Tools & Equip. Co.*, 348 P.3d 293, 294 (Or. Ct. App. 2015) (generally, "where one corporation transfers its assets to another, the latter does not as assume the liabilities of the transferor corporation").

---

[7] Because the parties cite Massachusetts and Oregon law interchangeably, and both states' laws regarding successor liability are the same, *see infra*, the court need not engage in a choice of law analysis.

In both Massachusetts and Oregon, the liabilities of a transferring/predecessor entity will be imposed upon the successor entity only if one of the following four "exceptions" is met:

> (1) the successor expressly or impliedly assumes liability of the predecessor,
> (2) the transaction is a de facto merger or consolidation,
> (3) the successor is a mere continuation of the predecessor, or
> (4) the transaction is a fraudulent effort to avoid liabilities of the predecessor.

*Premier Capital, LLC v. KMZ, Inc.*, 984 N.E.2d 286, 294 (Mass. 2013) (quoting *Milliken & Co. v. Duro Textiles, LLC*, 887 N.E.2d 244, 254–55 (2008)); *Gonzalez*, 348 P.3d at 294–95. "The traditional rule of corporate successor liability and the exceptions to the rule are generally applied regardless of whether the predecessor or successor organization was a corporation or some other form of business organization[.]" *Smith v. Kelley*, SJC-12759, 2020 WL 635210, at *6 (Mass. Feb. 11, 2020) (citation omitted).

"In order for one [entity] to be deemed a successor [entity] in the first place, it must be a successor to all, or substantially all, of another corporation's assets." *Premier Capital, LLC*, 984 N.E.2d at 292 (quoting *Nat'l Soffit v. Escutcheons, Inc. v. Superior Sys., Inc.*, 98 F.3d 262, 266 (7th Cir. 1996)). The transfer of assets is, therefore, a "threshold requirement" for imposing successor liability. *Fashionhaus*, 2018 WL 3965905, at *3 (citing *Premier Capital, LLC*, 984 N.E.2d at 292); *Dahlke*, 171 P.3d at 997.

Applying these principles, the Massachusetts Appeals Court in *Fashionhaus* reversed a trial court's decision holding that a newly-formed corporation, a clothing store, was responsible for the debts of its predecessor corporation/clothing store, because the facts did not show that the new corporation was "a successor to all, or substantially all," of the old corporation's assets. *Fashionhaus*, 2018 WL 3965905, at *1. Although the new corporation took over the operation of one of the old corporation's stores, "and that store essentially continued in operation, with no outward signs of change[,]" the old corporation either sold, liquidated, or returned its most

significant asset, its merchandise, to its vendors. *Id.* at *3. The Appeals Court reasoned that, while the new corporation may have acquired some of the old corporation's assets, "at the least, the goodwill associated with the location, customers, and ongoing business" at one of the old stores, it could not be considered a successor corporation for the purpose of assuming the old corporation's liability. *Id.* Because plaintiff failed to show that the threshold requirement applied, the court did not need to analyze any of the four exceptions. *Id.*; *see also Dahlke*, 171 P.3d at 997 (successor corporation could not be liable because it did not purchase the assets of the predecessor corporation).

In contrast, the Massachusetts Supreme Court decided this month that a sole proprietorship met the threshold requirement as a successor to a professional corporation, a law firm, when the sole shareholder of the professional corporation wound up the corporation and set up the sole proprietorship the day after a final judgment was entered against the corporation. *Smith*, 2020 WL 635210, at **3, 8. Although there was not a legal "transfer of assets" between the former professional corporation and the new sole proprietorship, the court concluded that the threshold requirement had been met when the shareholder "took the equipment, inventory, and supplies from the professional corporation for use in the sole proprietorship without paying for them." *Id.* at 7–8 (quoting *Columbia State Bank v. Invicta Law Grp., PLLC*, 402 P.3d 330, 340 (Wash. Ct. App. 2017) (threshold requirement met when owner of past business "simply [continued] using [its] assets for his new business")); *see also Atl. Res. Dev., LP v. InnSeason Mgmt., Inc.*, No. 18-P-985, 2019 WL 2067723, at *2 (Mass. App. Ct. May 10, 2019) (threshold requirement of transfer of assets was met, and "de facto merger" and "mere continuation" exceptions could apply, when old corporation's "assets, accounts payable, and employees were transferred to [new corporation] so

that [new corporation] could continue, without interruption, [old corporation's] business of selling timeshare interests").[8]

As in *Fashionhaus*, plaintiff's claims against BEM founder on the threshold requirement. Like the new corporation in *Fashionhaus*, but unlike the new sole proprietorship in *Smith* and the successor corporation in *Atlantic Resort Development*, BEM did not purchase, or otherwise acquire, any of BMW's assets at the time of its formation. Although plaintiff points out that BMW and BEM, like the two companies in *Fashionhaus*, as well as those in both *Smith* and *Atlantic Resort Development*, appear to be similar companies, with numerous overlapping characteristics, and BEM acquired "BMW's brand, good will, trademarks, website/URL, customer lists, contacts (including former employees and other associations), and other institutional material and knowledge" (#66 at 16), there is no dispute that a substantial majority of its assets were liquidated in the bankruptcy proceedings, long before BEM's formation. *See Premier Capital, LLC*, 984 N.E.2d at 293; *Dahlke*, 171 P.3d at 997.[9]

Plaintiff's remaining arguments for denying BEM's motion for summary judgment lack merit. Plaintiff first maintains that defendant's motion should be denied pursuant to Local Rule 56.1 because BEM's statement of material facts contains either disputed facts or legal conclusions, is inconsistent with the record, and, at times, does not cite to the record. (#66 at 8.) While some

---

[8] The court went on to hold that the "mere continuation" exception applied because both the sole proprietorship and the former PC used the same client fee agreements, "the same email address, the same physical address, the same IOLTA account with the same name, and the same health insurance with the same named employer, and paid the same creditors and vendors." *Smith*, 2020 WL 635210, at *7. Essentially, the professional corporation rolled over into the sole proprietorship, as if nothing had changed. *Id.*

[9] Even if BEM eventually acquired the rolling machines purchased by Boydstun, their estimated net value, $22,000.00 out of a $15,986,639.47 total estimated net value, represents a small portion of BMW's assets.

portions of defendant's statement of material facts may, in fact, violate Local Rule 56.1, the court may nonetheless grant summary judgment "if the motion and supporting materials—including the facts considered and undisputed—show that the movant is entitled to it[.]" Fed. R. Civ. P. 56(e)(3). For the reasons discussed *supra*, the uncontroverted material facts in the record establish that BEM did not acquire a substantial portion of BMW's assets and, therefore, cannot be liable to plaintiff, notwithstanding any additional facts or conclusions of law cited in violation of Local Rule 56.1. *See Terry v. SimplexGrinnell LP*, No. 11-40117-TSH, 2013 WL 1332240, at *1 (D. Mass. Mar. 28, 2013) (accepting material facts that defendant asserted as true would not have affected court's decision).

Plaintiff further argues that "BEM should be judicially estopped from claiming it is not a mere continuation of BMW" because it "repeatedly took the position that it [was] a continuation of BMW" in earlier patent litigation in Oregon that eventually settled. (#66 at 12, 15); *see* ##66-7; 66-12; 66-13, 66-14.[10] "[T]here are two generally agreed-upon conditions" for judicial estoppel to apply. *Guay v. Burack*, 677 F.3d 10, 16 (1st Cir. 2012). "First, the estopping position and the estopped position must be directly inconsistent, that is, mutually exclusive." *Id.* (quoting *Alt. Sys.*

---

[10] It should be further noted that the undisputed facts indicate that BEM purchased the patents at issue, previously owned by BMW, from Toyota, in 2018, approximately four years after it formed and six years after the bankruptcy proceedings concluded. (## 66-4 at 21–22; 66-9 at 2.) Therefore, the transaction would not constitute a "transfer of assets" required to show that BEM was a successor corporation. *See Premier Capital, LLC v. KMZ, Inc.*, 984 N.E.2d 286, 292 (Mass. 2013) (emphasis added) (Massachusetts Supreme Court "addressing successor liability have recognized consistently that successor liability depends on a transfer of all, or substantially all, assets from *a predecessor to a successor*"); *Carriero v. Rhodes Gill & Co.*, 68 F.3d 1443, 1448 (1st Cir. 1995) (citations omitted) ("[i]n our research of 'scholarly works,' . . . we find that successor liability in general [is] always discussed in the context of inter-corporate asset transfers"). Although the court could find no case applying either Massachusetts or Oregon law that specifically limited the threshold requirement to direct asset transfers, there is no hint that the threshold requirement should have a broader scope, particularly in the context of this case, where BEM acquired the assets at issue years after they were in BMW's possession.

*Concepts v. Synopsys, Inc.*, 374 F.3d 23, 33 (1st Cir. 2004)). "Second, the responsible party must have succeeded in persuading a court to accept its prior position." *Id.* (quoting *Alt. Sys. Concepts*, 374 F.3d at 33). Though not a formal requirement, "a third oft-considered factor . . . asks 'whether the party seeking to assert an inconsistent position would derive an unfair advantage'" by doing so. *Id.* (quoting *New Hampshire v. Maine*, 532 U.S. 742, 751 (2001)). Plaintiff's argument requires minimal discussion, as it is well-accepted that "[j]udicial estoppel does not apply to the settlement of an ordinary civil suit[,]" like BEM's previous patent litigation, "because there is no judicial acceptance of anyone's position" when a party decides to settle a case. *RFF Family P'Ship, LP v. Ross*, 814 F.3d 520, 530 (1st Cir. 2016) (quoting *Lowery v. Stovall*, 92 F.3d 219, 225 (4th Cir. 1996) (internal citations and quotation marks omitted)). Rather, a settlement is often born out of compromise. *Id.*[11]

Finally, plaintiff maintains that BEM has thwarted its attempts to obtain discovery. (#66 at 3–4.) Specifically, plaintiff claims that BEM has repeatedly failed to produce documentation regarding "fundamental matters[,]" including:

---

[11] Plaintiff also cites Boydstun's deposition transcript to argue that "Boydstun admitted [that] a court in Illinois expressly found [that] BMW is a mere continuation of BMW[.]" (#66 at 7.) During his deposition, Boydstun conceded that BEM had defaulted as a defendant in a case called "Frits," related to a trailer BMW manufactured and litigated in Illinois around 2016, because he had been unaware of the suit before the default judgment was entered. (#66-4 at 44, 68.) However, plaintiff fails to attach any pleadings from "Frits" to the record, and neither LEXIS nor Westlaw searches reveal any litigation involving BEM and an entity called "Frits" in Illinois state or federal court around 2016. In any event, because there was no "judicial acceptance" of any position taken by BEM when the court entered the default judgment against it, judicial estoppel would not apply to the default judgment for the same reasons it does not apply to BEM's previous settlement. *See Almeida-Leon v. WM Capital Mgmt.*, 236 F. Supp.3d 524, 535 (D.P.R. 2017)(quoting *Perry v. Blum*, 629 F.3d 1, 13 (1st Cir. 2010) (internal citations and quotation marks omitted) ("judicial estoppel is not meant to be a trap for the unwary and should be employed sparingly when there is no evidence of intent to manipulate . . . the courts")).

   trailer operator training and/or manuals; corporate Articles of Incorporation; records showing common supervisors; employees and directors for the various corporations; web page postings of BEM since it was incorporated; records showing similarity of customers between the two corporations; records showing BEM obtained BMW blueprints for trailers; records of [BEM]'s product advertisements; records of insurance applications for BEM; records of screw actuator repairs or replacements; and records of affidavits, designs[,] and testimony from other Boydstun cases[.]

*Id.* at 4. Plaintiff maintains that any lack of disputed material facts is only a result of BEM's non-production of these materials. *Id.* This argument also requires minimal discussion, as Rule 56(d) makes clear that a non-movant like plaintiff must show "by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition[.]" Fed. R. Civ. P. 56(d). Notwithstanding plaintiff's violation of Rule 56(d), any affidavit or declaration detailing BEM's lack of production of such materials would be pointless, as BMW's bankruptcy records make clear that there was no "transfer of assets," required for BEM to be liable as a successor entity.

## V. Conclusion.

  For the reasons stated, I RECOMMEND that defendant, Boydstun Equipment Manufacturing, LLC's motion for summary judgement (#63), be GRANTED.

                 /s/ Page Kelley
                 M. Page Kelley
                 United States Magistrate Judge

February 20, 2020